# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: | ) |
| | ) |
| JOHN & SHEILA DONOHUE, | ) Case No. 12-43535-can7 |
|     Debtors. | ) |
| | ) |
| | ) |
| KRAUS ANDERSON CAPITAL, INC. | ) |
|     Plaintiff, | ) |
| | ) Adv. No. 12-04275-can |
| v. | ) |
| | ) |
| JOHN & SHEILA DONOHUE, | ) |
| | ) |
|     Defendants. | ) |
| | ) |

## MEMORANDUM OPINON AND ORDER GRANTING PARTIAL[1] SUMMARY JUDGMENT

This matter is before the Court on the motion of separate defendant, Sheila Donohue, for summary judgment with respect to Plaintiff's complaint to determine dischargeability. For the reasons set forth below, the Court grants Sheila Donohue's motion.

*Nature of Case*

Defendants/Debtors John and Sheila Donohue are husband and wife. They filed a joint petition for Chapter 7 relief on August 24, 2012. The Donohues scheduled plaintiff Kraus Anderson Capital, Inc. ("KAC") as a creditor holding a judgment lien against their Missouri home in the amount of $96,449.85.  As will be further discussed below, the Donohues each had personally guaranteed the debt of their wholly-owned corporation, Powerscreen Midwest, Inc., to KAC, an equipment financer who had sold equipment to Powerscreen. KAC subsequently filed a

---

[1]The judgment is partial because it is not in favor of separate defendant John Donohue.

1

timely complaint to determine dischargeability, seeking a declaration that its debt should be declared nondischargeable under 11 U.S.C. §§ 523(a)(2), (a)(4) and (a)(6), and requesting entry of judgment in the amount of $63,237.68, plus interest, costs and attorney fees.[2] The Donohues filed separate answers, generally denying the allegations and seeking dismissal for failure to allege fraud with particularity and failure to state a claim.[3]

The gist of the complaint is that the Donohues, as owners and officers of Powerscreen, made fraudulent misrepresentations to KAC in connection with Powerscreen's improper sale of two pieces of KAC's collateral, a "Screening Plant" and a "Terex Conveyor." KAC further alleges that the Donohues sold or converted this equipment without remitting the sales proceeds to KAC. The Court set a deadline for the filing of dispositive motions, and has a final pretrial conference set as well as a one-day trial. In the interim, Mrs. Donohue timely filed this motion for summary judgment; KAC filed a response, and Mrs. Donohue a reply, after which the Court took the matter under advisement.

## *Standards for Summary Judgment*

There is no dispute regarding the standards for summary judgment under Fed. R. Civ. P. 56 as made applicable by Fed. R. Bankr. P. 7056; both parties correctly cite the relevant authorities, so the Court need not repeat those authorities here.[4] Rather, Mrs. Donohue's argument is in essence that KAC has failed to identify specific fraudulent misrepresentations, a fiduciary duty, or other involvement in the conversion of the equipment by Mrs. Donohue. KAC

---

[2] The amount of the debt or its status as an apparent judgment lien has not been made an issue by the parties in the context of the summary judgment motion. Defendants have, however, denied in their respective answers that the Court has jurisdiction to grant relief in the form of a money judgment. The Court does not need to address that issue in this Order, in light of its ruling.

[3] Fed. R. Civ. P. 9(g) and 12(b)(6), respectively, as incorporated by Fed. R. Bankr. P. 7009(g) and 7012(b)(6).

[4] *E.g., Celotex v. Catrett*, 477 U.S. 317, 322 (1986). *See also In re Asbury*, 441 B.R. 629, 633 (Bankr. W.D. Mo. 2010) (Dow, J.).

2

argues, on the other hand, that there are disputed issues of material fact regarding Mrs. Donohue's knowledge, and points to Mrs. Donohue's status as a shareholder, officer and employee of Powerscreen, as well as guarantor of Powerscreen's debt to KAC, to impute certain knowledge to her.

*Facts in Light Most Favorable to the Nonmoving Party, KAC*

The evidence, consisting of the complaint, answers, affidavit of Mrs. Donohue, relevant documents, and excerpts of deposition transcripts of Mrs. Donohue, Mr. Donohue, and Mr. James Jurassi, KAC representative, in the light most favorable to KAC, show the following:

Mr. and Mrs. Donohue formed Powerscreen, a Missouri corporation, in 1988. The record does not reflect what business Powerscreen conducted. Mr. Donohue was president of the business, and it can be inferred that he operated the business and was responsible for most of its day-to-day activities. Mr. and Mrs. Donohue were 50-50 shareholders; Mrs. Donohue was a secretary as well as a member of the board of directors. Mrs. Donohue signed a written resignation as secretary sometime in 2004, but does not appear to have resigned in fact at that time, since she was holding herself out as Powerscreen's secretary to KAC in November 2006, according to a document KAC submitted in support of its response.

Mrs. Donohue also worked at Powerscreen as one of about four employees, making about $800 every two weeks. She had some responsibility for bookkeeping and other office duties, such as answering the phone and filing, which she performed at the Powerscreen office. Early on, she was allowed to use a company credit card. Through the "early stages" Mrs. Donohue also sent financials to third parties, possibly KAC. At some point, she stopped being involved in bookkeeping and going to the office, but still continued to perform some duties as an employee at home, described as mailing certain items. The extent of her involvement in the day-

3

to-day activities is unknown, apart from her limited description in her affidavit. In 2010, she stopped taking a salary and eventually, the inference is, Powerscreen stopped doing business before the Donohues filed Chapter 7 bankruptcy.

KAC and Powerscreen started their business relationship in 2006. The record does not reflect the nature of the business relationship at that time. In June 2009, Powerscreen purchased the two pieces of equipment from KAC; KAC financed the purchase and retained a security interest in both the Screen Plant and the Terex Conveyor. Mr. and Mrs. Donohue both signed personal guarantees of the Powerscreen debt in favor of KAC.

Notwithstanding the lien, in May and August 2010, Powerscreen sold the Screening Plant and the Terex Conveyor to unrelated third parties for $80,000 and $32,000, respectively. Powerscreen did not remit the sales proceeds to KAC, and represented to KAC thereafter, in September and December 2010 written "audit reports," that the equipment had been rented, thus implying that the equipment was still in Powerscreen's custody and control. Mrs. Donohue by her own admission was not involved in and had no knowledge of the sales of the equipment, or the misrepresentation in the audit reports, and otherwise made no representations to KAC regarding the equipment. Mrs. Donohue did not receive any of the sales proceeds.

Powerscreen developed financial difficulties in 2009-2010. Mrs. Donohue continued to work for Powerscreen during this time; she and her husband discussed the financial difficulties of the company generally. At some point she stopped taking a salary. The fair inference based on the state of the record as submitted for consideration of the motion for summary judgment is that Mr. Donohue knowingly sold KAC's collateral without its consent, misrepresented to KAC that the sales had occurred, and disposed of the sales proceeds.

*Discussion*

Addressing each count of the complaint in turn:

*Count I - Section 523(a)(2)(A)*

11 U.S.C. § 523(a)(2)(A) provides that an individual debtor's discharge does not discharge a debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.[5] A creditor seeking to prevail under § 523(a)(2)(A) must ordinarily show, by a preponderance of the evidence, five elements: (1) the debtor made a representation, (2) with knowledge of its falsity, (3) deliberately for the purpose of deceiving the creditor, (4) who justifiably relied on the representation, which (5) proximately caused the creditor damage. *In re Treadwell*, 637 F.3d 855, 860 (8th Cir. 2011); *R & R Ready Mix v. Freier* (*In re Freier*), 604 F.3d 583, 587 (8th Cir. 2010).

Under certain circumstances, nondischargeability may be imputed from one debtor to another. In these circumstances, a debtor's actual participation in the fraud is not required to render the resulting debt nondischargeable. *In re Walker*, 726 F.2d. 452, 454 (8th Cir. 1984). Rather, the United States Supreme Court has recognized that a debt may be nondischargeable either when the debtor personally commits fraud or when actual fraud is imputed to the debtor

---

[5] The exception for discharge of written false statements respecting the debtor's or an insider's financial condition is set forth in 11 U.S.C. § 523(a)(2)(B). Although KAC's complaint and response refer only generally to § 523(a)(2), the complaint and response are devoid of any allegation that either debtor provided a written false financial statement to KAC within the meaning of § 523(a)(2)(B); to the extent necessary, the Court finds that no § 523(a)(2)(B) ground has been timely pled, and that judgment in favor of Mrs. Donohue should be entered against KAC with respect to § 523(a)(2)(B).

under agency principles. *In re Miller*, 276 F.3d 424, 429 (8th Cir. 2002), *citing Strang v. Bradner*, 114 U.S.C. 555, 561, 5 S.Ct. 1038, 29 L.Ed. 248 (1885).[6]

Whether an agency relationship exists is a matter of state law. *In re Reuter*, 686 F.3d 511, 517 (8th Cir. 2012). Three examples of the types of situation where courts impute liability under agency principles include partnership, principal-agent and conspiracy. *E.g., In re Treadwell*, 637 F.3d at 860 (discussion of partnership); *In re Walker*, 726 F.2d. at 454 (principal-agent); *In re Murray*, 408 B.R. 268, 276 (Bankr. W.D. Mo. 2009) (conspiracy). *Compare In re Miller*, 276 F.3d 424, 429 (8th Cir. 2002) (refusing to impose vicarious liability for securities fraud under securities statute in absence of agency relationship). Imputation is only proper in the Eighth Circuit if the otherwise innocent debtor knew or should have known of her partner's fraud. *In re Walker*, 726 F.2d. at 454.   Reckless indifference is evidence the innocent debtor should have known of the fraud. *Id.*[7]

For purposes of this motion, KAC does not attempt to assert that Mrs. Donohue was an active participant in any fraud, or to otherwise controvert her sworn statement that she had no knowledge and was not involved. Notwithstanding KAC's failure, and before turning to KAC's

---

[6] In denying a discharge to two innocent partners of a fraudulent businessman, *Strang* held that "if, in the conduct of partnership business, and with reference thereto, one partner makes false or fraudulent representation of fact to the injury of innocent persons who deal with him as representing the firm, and without notice of any limitations upon his general authority, his partners cannot escape pecuniary responsibility therefor upon the ground that such misrepresentations were made without their knowledge." *Strang*, 114 U.S. at 561.

[7] The Eighth Circuit appears to be in the minority; the majority of courts are said to hold that an innocent debtor is liable for her agent's wrongdoing regardless of the debtor's knowledge. *See, e.g., In re Heinz*, 501 B.R. 746, 761-62 (Bankr. N.D. Ala. 2013), *citing Carroll v. Quinlivan (In re Quinlivan)*, 434 F.3d 314 (5th Cir. 2005). The Eighth Circuit is aware that its standard may be contrary to the Supreme Court's decision in *Strang*, however. *See In re Reuter*, 686 F.3d at 518 ("We note that a requirement of recklessness appears to contravene controlling authority established by the Supreme Court in *Strang*." (cite omitted)). *But see Bullock v. BankChampaign, N.A.*, 133 S.Ct. 1754, 1757 (2013) (in context of § 523(a)(4), "defalcation" denotes a culpable state of mind, involving "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior"). This Court notes that *Bullock* was decided after *Reuter*.

6

imputation argument, the Court must determine whether Mrs. Donohue is entitled to summary judgment based on an allegation of fraud under § 523(a)(2)(A).

### *Whether Mrs. Donohue Was Actively Involved in Any Fraud*.

Turning first to the complaint: The complaint, in ¶ 30, only generally alleges that "Defendants[8] falsely represented to [KAC] or [KAC's] agent that they owned or possessed the Screening Plant and Terex Conveyor when in fact they had sold such equipment in order to induce [KAC] to extend, renew, and refinance existing financing." Count I incorporates this allegation and includes a similar allegation. The Donohues' separate answers each denied these allegations.

In her motion for summary judgment, as noted above, Mrs. Donohue in a sworn affidavit states that she had no involvement or knowledge about the sales of the equipment, and did not make any representations to KAC regarding such. She also affirmatively states she received no proceeds from the sales.

Mrs. Donohue also points to certain discovery in support of her motion for summary judgment. Interrogatory No. 1 requested that KAC state "the specific alleged false representations attributed to Defendant Sheila Ann Donahue referenced in paragraph 30 of Plaintiff's Complaint…" KAC's response refers only generally to certain written reports[9]:

> The Quicktrack audit reports dated September 22, 2010 and December 16, 2010 provided to Plaintiff state that the Screening Plant and Terex Conveyor were on rent to Powerscreen Kentucky. The Sales Contracts produced by Defendant in discovery in this case show that the Terex Conveyor was sold to R.D. Johnson on August 8, 2010 and the Screening Plant was sold to Gana Trucking and Excavating on May 20, 2010.

*Motion for Summary Judgment, Exhibit D.*

---

[8] The complaint refers to Powerscreen as a defendant, although it has not been named.

[9] The audit reports are not part of the record before the Court.

7

In addition, Mrs. Donohue's Motion includes excerpts of a deposition of James Jarussi on behalf of KAC. In response to what information KAC had that Mrs. Donohue knew anything about the "purchase, sale, or the removal" of the equipment, Mr. Jarussi answers, "Only to the effect that I considered her part of the organization, because she was secretary … [a]nd she was a personal guarantor." Mr. Jurassi further testified in his deposition that Mrs. Donohue's name was not on the Quicktrack audit reports that had been referenced in the interrogatory answers. *Motion for Summary Judgment, Exhibit E.* KAC's only attempt to controvert Mrs. Donohue's denial of direct participation in the alleged fraud was its attachment to its response of a Powerscreen "Certificate Regarding Corporate Resolutions" (*Exhibit H*) in which Mrs. Donohue certified to KAC that she was the duly elected and acting secretary of Powerscreen as of November 11, 2006, some two years after the July 2004 date she claims she resigned, in addition to the other arguments and documents reflecting her status and knowledge generally (discussed in detail below).

The Court concludes in light of this uncontroverted evidence that Mrs. Donohue was not actively involved in any fraud against KAC within the meaning of § 523(a)(2)(A).

First, in the absence of imputation, § 523(a)(2)(A) requires that KAC prove as the first element that Mrs. Donohue made a representation. *In re Treadwell*, 637 F.3d at 860. The only representation KAC has alleged is that Powerscreen or "the Defendants" falsely represented to KAC that Powerscreen still possessed the equipment when in fact the equipment had been sold. Mrs. Donohue states in her affidavit that she made no representation to KAC regarding the equipment and had no knowledge or awareness of the sale. This sworn affidavit satisfies her initial burden of proof as moving party to show she did not make a misrepresentation to KAC.

8

In response, KAC was required "to set forth specific facts sufficient to raise a genuine issue for trial… and may not rest on its pleadings or mere assertions of disputed fact to defeat the motion." *In re Asbury*, 441 B.R. 629, 633 (Bankr. W.D. Mo. 2010). Here, KAC does not point to any representation Sheila Donohue made to KAC, even admitting that her name was not on the Quick Audit reports. KAC has thus not met its burden of setting forth specific facts to controvert Mrs. Donohue's sworn statement that she did not misrepresent anything regarding the equipment sales to KAC.

Second, KAC asserts in essence that whether Mrs. Donohue made a misrepresentation or not is irrelevant, since Powerscreen's conduct of selling equipment "out of trust" constitutes fraud, and that fraudulent conduct generally is sufficient to trigger nondischargeabilty under § 523(a)(2). KAC relies on *In re Vitanovich*, 259 B.R. 873 (B.A.P. 6th Cir. 2001), a check-kiting case, which held that actual fraud is not limited to a false representation, but may include "any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another." *Id*. (cites omitted).

Setting aside the issue of whether *Vitanovich* would be followed in the 8th Circuit,[10] and even assuming it would, KAC again fails to allege any "deceit, artifice, trick or design" by Mrs. Donohue involving the "direct and active operation" of Mrs. Donohue's mind. KAC simply fails in its burden to point to any evidence of fraudulent conduct by Mrs. Donohue sufficient to raise a genuine issue of material fact. The Court therefore concludes that Mrs. Donohue is entitled to a

---

[10]The 8th Circuit in *Treadwell* noted that, in that case, the parties had conflated "false pretenses, a false representation or actual fraud" into the singular concept of fraud, and stated that it would follow the parties' lead, but also stated it was for purposes of that appeal only. *In re Treadwell*, 637 F.3d at 859, fn. 5.

9

judgment as a matter of law with respect to any allegation that she was a participant in any fraud against KAC.[11]

### *Whether Fraud Should Be Imputed to Mrs. Donohue*

Having addressed Mrs. Donohue's direct involvement, the Court turns to KAC's legal argument that a genuine issue of material fact exists as to whether fraud should be imputed to Mrs. Donohue based on partnership, agency or other principles. Specifically, KAC argues that, "[a]s 50% shareholders, Defendants John and Sheila Donohue were essentially in a partnership," and that "[a]s an officer she was an agent of the corporation."

As noted above, the 8th Circuit authorizes imputation of fraud in bankruptcy dischargeability proceedings under partnership, agency or conspiracy vicarious liability principles, and when the innocent debtor "knew or should have known" of the fraud. *In re Treadwell*, 637 F.3d at 860. State law, however, determines whether a partnership exists. *In re Reuter*, 686 F.3d at 517. Under Missouri law, when a fraud is perpetrated in the ordinary course of the partnership's business, the fraud is imputed to the other partners. *Id.*, *citing Dwyer v. ING Inv. Co., Inc.*, 889 S.W.2d 902, 906 (Mo. Ct. App. 1994); Mo.Rev.Stat. § 358.130.

Missouri law defines a partnership as "an association of two or more persons to carry on as co-owners [of] a business for profit." *In re Murray*, 408 B.R. at 276, *citing Norber v. Marcotte*, 134 S.W.3d 651, 658 (Mo. Ct. App. 2004); *Fischer v. Brancato*, 937 S.W.2d 379, 382 (Mo. Ct. App. 1996). As explained in more detail, a "[p]artnership is … a contract of two or

---

[11]As Counsel for Mrs. Donohue notes in his Reply, simply lobbing broad, conclusory attacks on credibility is insufficient to defeat a summary judgment motion. *See, e.g., Sharp v. Atwood Mobile Products, Inc.*, No. 2:12-CV-82-KS-MTP, 2013 WL 2099737 (S.D. Miss. May 14, 2013) (slip copy) ("The Court is not permitted to make credibility determinations or weigh the evidence. …When deciding whether a genuine fact issue exists, 'the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party. … However, '[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial'") (cites omitted).

more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business and to divide the profits and bear the loss in certain proportions." *In re Murray*, 408 B.R. at 276.

The primary criteria in determining the creation of a partnership is the intention of the parties. *Id.* The partnership agreement itself may be written, expressed orally, or implied from the acts and conduct of the parties. *In re Reuter*, 686 F.3d at 517. The party asserting the existence of the partnership must prove its existence by "clear, cogent, and convincing evidence." *Id.*

The Court agrees that whether a partnership or conspiracy exists, or whether a principal-agent relationship exists, is ordinarily a fact-intensive question that may not be appropriate for summary judgment. *See, e.g., In re Treadmill*, 637 F.3d at 863. In this case, however, KAC's complaint makes no allegation that the Donohues were in any type of partnership, or that Powerscreen was operated as a partnership. Rather, KAC's complaint alleges that Powerscreen is a Missouri corporation (¶ 2), that the Donohues are husband and wife (¶ 5), and that Mr. Donohue is Powerscreen's president (¶ 6). Under Eighth Circuit law, "factual statements in a party's pleadings are generally binding on that party unless the pleading is amended." *In re Reuter*, 686 F.3d at 517. Moreover, as noted above, KAC's responses to interrogatories and deposition do not rely on an alleged partnership for imputation of fraud, but on the fact she was the secretary and that KAC's representative considered her "part of the organization."

More importantly, a corporation is "not its incorporators or shareholders; it is not a partnership or joint venture; it is, rather, another and particular kind of creature, with its own rights and duties." *City of Lake Ozark v. Campbell*, 745 S.W.2d 799 (Mo. Ct. App.S.D. 1988) (discussing whether the corporate form may be disregarded when awarding eminent domain

11

damages) (cites omitted). Merely because Mrs. Donohue was a co-shareholder, officer and employee does not as a matter of law transmute her role into a partner, or transform Powerscreen the corporation into a partnership. And, KAC makes no effort to point to facts, disputed or otherwise, from which the Court could infer that Powerscreen was other than a valid corporation, and that Mrs. Donohue was other than an employee, shareholder and officer thereof. As such, as a matter of law, there is no basis for imputation under partnership principles.[12] The fact that there is a disputed factual issue as to when Mrs. Donohoe resigned as officer of Powerscreen is not material, since it does not bear on the issue of whether Powerscreen was a partnership.

Besides partnership, the other closely-related[13] situation in which fraud may be imputed to a debtor involves fraud of the debtor's agent. Again, the Eighth Circuit holds that "[p]roof that a debtor's agent obtains money by fraud does not justify the denial of a discharge to the debtor, unless it is accompanied by proof which demonstrates or justifies an inference that the debtor knew or should have known of the fraud." *Walker v. Citizens State Bank of Maryville, Missouri (In re Walker),* 726 F.2d 452, 454 (8th Cir. 1984).[14]

In this case, KAC appears to confuse who is the agent of whom for purposes of applying this standard. Under the *Walker* theory, KAC would have to point to evidence, in the light most favorable to KAC, that Mrs. Donohue *as principal* knew or should have known of the fraud of *her agent* – either Powerscreen or Mr. Donohue. KAC points to no facts that would indicate

---

[12]*See also Agribank v. Gordon (In re Gordon)*, 293 B.R. 817 (Bankr. M.D. Ga. 2003) (the marital relationship itself does not provide a sufficient basis for imputing fraud, given that wife was not a partner).

[13]Partnership of course also involves agency principles.

[14]The 8th Circuit in *Treadwell* notes that *Walker* is "controversial," but does not overrule it. *Treadwell,* 637 F.3d at 860, fn 6.

Powerscreen or Mr. Donohue are Mrs. Donohue's agents; rather, KAC argues, contradictorily, that Mrs. Donohue is *Powerscreen's* agent.[15]

In sum, without any admitted false representations or active participation in the fraud by Mrs. Donohue, or any shred of any "fact" from which the Court can infer that Mrs. Donohue was in partnership or conspiracy with Mr. Donohue or that he was otherwise her agent, the Court simply has no choice but to conclude KAC failed in its burden of coming forward with some evidence to controvert Mrs. Donohue's evidence of her limited role and lack of knowledge.[16] Given this ruling, the Court does not reach the issue of whether Mrs. Donohue should have known of Mr. Donohue's alleged fraud.

*Count II - Section 523(a)(4)*

Section 523(a)(4) excepts from discharge debts "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Although KAC's complaint alleged the debt should be nondischargeable both for breach of fiduciary duty as well as embezzlement grounds, KAC in its Response argues only that Mrs. Donohue's debt should be denied on the grounds of embezzlement. The Court deems that KAC has abandoned any claim of nondischargeability on account of breach of fiduciary duty, and therefore addresses only whether there is a genuine issue of material fact that precludes summary judgment as to embezzlement.[17]

---

[15] KAC cites no authority for the proposition that an officer is an agent of a corporation for purposes of vicarious liability, or that an officer of an otherwise valid corporation can simultaneously be a partner, or that a corporation can also simultaneously be a partnership.

[16] The factual dispute about whether Mrs. Donohue resigned as secretary in 2004 or whether she was still an officer in 2006 or later is not material to the issue of whether a partnership, agency or conspiracy may have existed, since, standing alone, her status as an officer does not tend to prove a partnership, agency or conspiracy existed. Likewise, the factual dispute  -- as to the level and dates of Mrs. Donohue's involvement in Powerscreen as a bookkeeper or her knowledge of Powerscreen's financial difficulties -- is not material to the issue of whether a partnership, agency or conspiracy existed, in the absence of any facts tending to show a partnership, agency or conspiracy existed.

[17] In any event, Counsel for Mrs. Donohue correctly points out that nondischargeability for breach of fiduciary duty requires the establishment of a fiduciary relationship between the debtor and creditor as well as the debtor's commission of a fraud or defalcation in the course of that relationship. *Jafarpour v. Shahrokhi (In re*

Embezzlement is defined as the "fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Belfry*, 862 F.2d 661, 662 (8th Cir. 1988). A plaintiff bears the burden of showing by a preponderance of the evidence that the debtor unlawfully used the funds for an unauthorized purpose. *Id.*; *In re Murray*, 408 B.R. at 275 (Bankr. W.D. Mo. 2009). To prevail, a creditor must prove that the debtor appropriated the funds at issue for her own benefit by fraudulent intent or deceit; deposited the funds into an account accessible only to the debtor; and that the debtor was not lawfully entitled to the use of those funds for the purposes for which they were in fact used. *Id*. The wrongful act of embezzlement may, under the partnership, agency or conspiracy theories discussed above, be imputed to an otherwise innocent debtor based on the reckless indifference standard. *Id.*

In this case, the only evidence in the record with respect to the equipment sale proceeds and their use is Mrs. Donohue's affidavit testimony stating she did not receive the sales proceeds. KAC made no effort to controvert her testimony, instead relying on the imputation theory. In the absence of any evidence, the Court concludes that no genuine issue of material facts exist with respect to whether Mrs. Donohue's debt to KAC arose out of her participation in an embezzlement of the sales proceeds, and the Court concludes that Mrs. Donohue is entitled to judgment as a matter of law with respect to any claim of her participation in any embezzlement.[18] Likewise, for the same reasons as stated above, KAC has failed to establish any

---

*Shahrokhi)*, 266 B.R. 702 (B.A.P. 8th Cir. 2001). A fiduciary relationship requires the existence of an express, technical trust. *Davis v. Aetna Acceptance Co*., 293 U.S. 328 (1934). Whether a fiduciary relationship exists is a question of federal law. *In re Nail*, 680 F.3d 1036, 1039 (8th Cir. 2012). Even in the light most favorable to KAC, the relationship between KAC and Mrs. Donohue was nothing more than that of a creditor-debtor, legally insufficient to create a fiduciary relationship. To the extent necessary, the Court grants summary judgment finding as a matter of law that Mrs. Donohue is not a fiduciary to KAC.

[18]KAC cites *In re Sinchak*, 109 B.R. 273 (Bankr. N.D. Ohio 1990), for the proposition that use of sales proceeds arising from the improper sale of collateral – typically thought of as willful and malicious injury under 11 U.S.C. § 523(a)(6) -- may also constitute embezzlement within the meaning of § 523(a)(4). The Court questions,

disputed issues of material fact that would preclude summary judgment on the imputation theory. The Court also concludes that Mrs. Donohue is entitled to judgment as a matter of law with respect to any imputed knowledge or liability with respect to § 523(a)(4).

*Count III - Section 523(a)(6)*

Section 523(a)(6) bars discharge of debts "for willful and malicious injury" to a creditor or to a creditor's property. To be "willful," the injury must be "intentional or deliberate. *In re Thompson*, 686 F.3d at 947; to qualify as "malicious," the debtor's action must be targeted at the creditor … at least in the sense that the conduct is certain or almost certain to cause financial harm." *Id., citing In re Madsen*, 195 F.3d 988, 989 (8th Cir. 1999). *See also Kawaauhau v. Geiger*, 118 S.Ct. 974 (1998) (debt arising from medical malpractice held dischargeable where conduct was reckless or negligent; actual intent to cause injury required).

Here, Mrs. Donohue's sworn affidavit states she had no knowledge of or involvement in the sales of KAC's collateral, and did not receive the proceeds. KAC chooses not to controvert this sworn testimony directly, but instead points to Mrs. Donohue's admitted knowledge of Powerscreen's financial difficulties and concludes, based on this knowledge, that "Powerscreen was not able to pay its debts in the ordinary course of business," such that the "fraud and deceit" should be imputed to Mrs. Donohue. There is no evidence whatsoever regarding Powerscreen's ability to pay its debts in the ordinary course – being in "financial difficulty" may or may not mean that one is unable to pay one debts in the ordinary course. Even assuming, in the light most favorable to KAC, that Powerscreen was insolvent when the equipment was sold, KAC has

---

however, whether *Sinchak* would be followed in the Eighth Circuit under the alleged facts of this case. *See, e.g., In re Thompson*, 686 F.3d 940, 947 (8th Cir. 2012) (contract did not give creditor an ownership interest in the funds); *In re Phillips*, 882 F.2d 302, 304 (8th Cir. 1989) (bank's security interest alone did not give it an ownership interest in the funds). Having determined that KAC fails to state a claim for embezzlement, the Court need not reach that issue for purposes of the summary judgment motion.

15

failed to show any fact from which the Court could infer Mrs. Donohue willfully and maliciously injured KAC. And, for the same reasons as stated above, KAC fails to make a case for imputation based solely on Mrs. Donohue's awareness of Powerscreen's financial difficulties, as KAC argues. The Court therefore concludes that no genuine issue of material fact exists as to § 523(a)(6) and that Mrs. Donohue is entitled to judgment as a matter of law.

## Conclusion

Rather than make any effort to come forward with evidence to controvert Mrs. Donohue's sworn statement that she was not involved in any fraud or deceit arising from the conversion of KAC's collateral, KAC instead relies on non-relevant suppositions and conclusions in support of a legal theory that Mr. Donohue's alleged fraud and deceit should be imputed to her. Once the moving party has met its initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial, and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Torgerson v. City of Rochester*, 643 F.3d. 1031, 1042 (8th Cir. 2011). KAC has failed in its burden, and the Court therefore concludes that no genuine dispute as to any material fact exists and that Mrs. Donohue is entitled to judgment on KAC's complaint as a matter of law. Her Rule 9 and 12(b)(6) motions are therefore overruled as moot. A separate judgment shall issue forthwith.

Dated this 3rd day of January, 2014.

/s/Cynthia A. Norton
United States Bankruptcy Judge